UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NORMA MARCELLA, *et al*.                             CIVIL ACTION

VERSUS                                               NO. 24-780

HUNTINGTON INGALLS                                   SECTION M (4)
INCORPORATED, *et al*.

## <u>ORDER & REASONS</u>

Before the Court is a motion by plaintiffs Norma Marcella, Scott Marcella, Troy Marcella, and Toni Hebert (collectively, "Plaintiffs") to reconsider this Court's order on remittitur.[1] Plaintiffs seek an increase in the remitted general damages award, contending that this Court improperly applied the maximum recovery rule.[2] They also ask the Court to clarify whether retrial would be confined to damages.[3] The third-party defendants respond, adopting Plaintiffs' view that any retrial should be limited to damages.[4] Defendant and third-party plaintiff Huntington Ingalls Incorporated ("Avondale") responds in opposition to Plaintiffs' motion,[5] and Plaintiffs and Avondale submit replies in further support of their respective positions.[6] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons

---

[1] R. Doc. 381 (citing R. Doc. 380).

[2] *Id*

[3] *Id.*

[4] R. Docs. 384; 387; 389; 393. The third-party defendants are: (1) Foster Wheeler LLC; (2) General Electric Company, now operating as GE Aerospace; (3) International Paper Company; (4) Paramount Global, f/k/a ViacomCBS Inc., f/k/a CBS Corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, f/k/a Westinghouse Electric Corporation; (5) Uniroyal Holding Inc.; and (6) Bayer CropScience, Inc, as successor to Rhone-Poulenc AG Company, f/k/a Amchem Products, Inc., f/k/a Benjamin Foster Company (collectively, "Third-Party Defendants"). They take no position on Plaintiffs' motion to reconsider the amount of the general damages award. *See* R. Doc. 384 at 1.

[5] R. Doc. 394.

[6] R. Docs. 395; 399; 403.

denying the motion as to increasing the damages award and granting the motion as to clarifying that any retrial will be limited to the issue of damages.

## I.    BACKGROUND

This is a personal injury case arising from asbestos exposure.  On October 21, 2023, Ronald Marcella died, and an autopsy later revealed that he had asbestos-related mesothelioma.[7]  His widow and adult children, Plaintiffs, filed this suit against Avondale and various other defendants, alleging that Marcella was occupationally and environmentally exposed to asbestos in the 1960s and 1970s, including when he worked at Avondale's shipyard as a clerk from May 1962 to May 1964.[8]

The case was tried before a jury from February 2, 2026, through February 11, 2026.[9]  At the time of trial, Plaintiffs' only remaining claim was against Avondale, but Avondale was still pursuing its third-party claims against the six Third-Party Defendants, as well as seeking to have fault assigned to two nonparty asbestos manufacturers.  The jury found Avondale negligent and awarded Plaintiffs $6,625,000 in general damages.[10]  The jury also found in favor of the Third-Party Defendants and nonparties on Avondale's negligence and strict-liability claims.[11]  The Court entered judgment in accordance with the jury verdict.[12]  The parties then filed posttrial motions.[13]  Relevant here, this Court granted Avondale's motion for remittitur and reduced the general damages award to $3,900,000.[14]  Plaintiffs now seek reconsideration of the remittitur and clarification regarding the scope of any retrial.[15]

---

[7] R. Doc. 2-1 at 3.
[8] *Id.* at 1-4.
[9] R. Docs. 291; 292; 293; 305; 306; 307; 308; 309; 310.
[10] R. Doc. 311.
[11] *Id.*
[12] R. Doc. 314.
[13] R. Docs. 316; 324; 328.
[14] R. Doc. 380 at 20-32, 35-36.
[15] R. Doc. 381.

## II.    PENDING MOTION

Plaintiffs move for reconsideration of the remittitur under Rule 54(b) of the Federal Rules of Civil Procedure, seeking an increase in the damages award from $3,900,000 to $5,850,000.[16] They argue that this Court improperly calculated the damages award.[17]  Plaintiffs contend that, once a court determines that a damages award was excessive, the maximum recovery rule requires a three-step process to set the remitted amount: (1) the court must determine the highest amount that the jury could have awarded; (2) next, the court must adjust for inflation; and (3) lastly, the court must increase the inflation-adjusted award by 50%.[18]  They say that step three is missing from this Court's analysis.[19]  In Plaintiffs' reframing of the Court's analysis, they assert that this Court found that $3,000,000 was the highest amount that the jury could have awarded and then adjusted that number for inflation, but it subsequently failed to increase the inflation-adjusted amount by 50%.[20]  Although Plaintiffs acknowledge that a court need not apply the 50% multiplier if its remittitur analysis relies on past similar awards that had already applied the multiplier, Plaintiffs reason that the *Gaddy* court did not do so in the decision upon which this Court relied, meaning that it was necessary for this Court to do so.[21]  Plaintiffs further argue that the multiplier pertains to mesothelioma cases – and all other sorts of cases – but that the *Gaddy* court was not asked to use it.[22]  Finally, Plaintiffs contend that any retrial should be limited to damages because liability has been established and damages can be tried alone without confusion.[23]  The Third-Party Defendants echo Plaintiffs' contention that any retrial should be confined to damages.[24]

---

[16] R. Doc. 381.
[17] *Id.*
[18] R. Doc. 381-1 at 5-11.
[19] *Id.*
[20] *Id.*
[21] *Id.* at 9.
[22] *Id.* at 10-11.
[23] *Id.* at 11-12.
[24] R. Docs. 384; 387; 389; 393.

In opposition, Avondale argues that the Court properly applied the maximum recovery rule, making reconsideration unwarranted under Rule 59(e) of the Federal Rules of Civil Procedure.[25] Avondale contends that there is no requirement that a court award exactly 150% of the highest comparable award, but rather that the maximum recovery rule is a guidepost that courts use in the remittitur analysis to scrutinize damage awards against the evidence presented at trial and in light of the relevant federal and state law.[26] Avondale points out that strict application of the 50% multiplier *to every remitted award* (like the one in *Gaddy*) would "lead to absurd results," because "each award [would be] 50% higher than the last, [meaning that] damages would increase exponentially and reach staggering levels."[27] Avondale further argues that Plaintiffs' description of the *Gaddy* decision is incorrect, especially considering that the case was affirmed by the Fifth Circuit after its review of the district court's remittitur analysis and application of the maximum recovery rule.[28]

Plaintiffs reply, arguing that Avondale urges the wrong standard of review because the remittitur order was interlocutory and can be amended for any reason, not just manifest error.[29] Plaintiffs also argue that the 50% multiplier is mandatory under the maximum recovery rule to avoid substituting the opinion of the court for that of the jury when the multiplier was not part of the initial calculation of damages.[30] Finally, Plaintiffs contend that *Gaddy*, and its appellate iteration (*Adams*), are "non-precedential" and that neither the district court nor the Fifth Circuit treated the multiplier as optional.[31] Plaintiffs also assert that the multiplier was not used in those

---

[25] R. Doc. 394.
[26] *Id.* at 1-7.
[27] *Id.* at 6.
[28] *Id.* at 8.
[29] R. Doc. 395 at 2, 4.
[30] *Id.* at 3-7.
[31] *Id.* at 3, 8-9.

cases because "no party raised" it and the plaintiffs there could not challenge it on appeal because they accepted the remitted award.[32]

In its surreply, Avondale argues that Plaintiffs cannot show that the Court erred under either proposed standard of review.[33] And Avondale reasserts that the 50% multiplier is not mandatory and Plaintiffs did not demonstrate error in this Court's remittitur analysis which set an appropriate award under Louisiana and federal law.[34]

In a sur-surreply, Plaintiffs end their briefing where it began – namely, with the mistaken notion that this Court skipped the multiplier step of the maximum recovery rule.[35] They then proceed to repeat various points, some of which are drawn from this incorrect assumption, to debunk Avondale's purported position that "the multiplier is discretionary."[36]

## III.    LAW & ANALYSIS

### A. Legal Standard

The parties champion the application of different legal standards.[37] Plaintiffs argue that this Court's ruling on the posttrial motions was an interlocutory order to which the more flexible Rule 54(b) standard applies to allow for reconsideration.[38] Avondale, on the other hand, argues that other sections of court have applied the more restrictive Rule 59(e) standard to motions to reconsider remittitur orders.[39] The Court need not resolve this dispute, because under either rule the result is the same.

---

[32] *Id.* at 8.
[33] R. Doc. 399 at 1-2.
[34] *Id.* at 2-6.
[35] R. Doc. 403 at 2.
[36] *Id.* at 2-4 (quote at 3).
[37] R. Docs. 381-1 at 8; 394 at 2-3.
[38] R. Doc. 381-1 at 8.
[39] R. Doc. 394 at 2-3.

Motions for reconsideration of interlocutory orders – orders that do not result in final judgments – are governed by Rule 54(b).  Under that rule, a "court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quotation omitted).  Rule 54(b) "'reflect[s] the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'"  *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015)) (internal quotation marks omitted).  However, the district court must exercise this broad discretion sparingly to forestall the perpetual reexamination of orders and the resulting burdens and delays.  *See Calpecto 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993) (observing that if "the district court was required to reconsider [an interlocutory order] simply because [the losing party] belatedly came forward with evidence not submitted prior to the ruling[,] ... the cycle of reconsideration would be never-ending"); *Domain Prot., LLC v. Sea Wasp, LLC*, 2019 WL 3933614, at *5 (E.D. Tex. Aug. 20, 2019) ("[A]lthough a district court may revisit an interlocutory order on any ground it sees fit, it may also use its discretion to prevent parties from, without justification, raising new arguments for the first time."  (emphasis, alteration, and quotation omitted)); 18B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 4478.1 (3d ed. 2019) ("A trial court could not operate if it were to yield to every request to reconsider each of the multitude of rulings that may be made between filing and final judgment.").

"A Rule 59(e) motion is a motion that calls into question the correctness of a judgment." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002).  Under the rule, a movant must show that relief is necessary for at least one of the following reasons: (1) to correct manifest errors of law or fact upon which the judgment is based; (2) to consider newly discovered or previously

6

unavailable evidence; (3) to prevent manifest injustice; or (4) to address an intervening change in the controlling law. *Markel Am. Ins. Co. v. Diaz-Santiago*, 674 F.3d 21, 32 (5th Cir. 2012); *Barber v. Spinal Elements*, 2019 WL 5810304, at *2 (E.D. La. Nov. 7, 2019). "Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2810.1 (2d ed. 1995)); *see also In re Self*, 172 F. Supp. 2d 813, 816 (W.D. La. 2001) ("A Rule 59(e) motion should not be used to relitigate prior matters that should have been urged earlier or that simply have been resolved to the movant's dissatisfaction."). In deciding the outcome of a Rule 59(e) motion, the court must balance "two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). And while a district court has considerable discretion to grant or deny a Rule 59(e) motion, the grant of such a motion is an "extraordinary remedy that should be used sparingly." *Indep. Coca-Cola Emps.' Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Co. United, Inc.*, 114 F. App'x 137, 143 (5th Cir. 2004).

### B. The Remittitur Award

Plaintiffs' view of this Court's remittitur order is skewed. In their effort to avoid the consequences of the remittitur warranted by the jury's excessive verdict, Plaintiffs inaccurately recount the analysis of an experienced and able trial judge, and the Fifth Circuit panel affirming his decision, and then go on to prescribe a rigid sequence of operations for applying the maximum recovery rule in disregard of the laws of mathematics. But the maximum recovery rule is not nearly so rigid in its application. The explanation is straightforward.

7

As explained in its Order & Reasons, this Court undertook the two-step inquiry outlined by the Fifth Circuit in *Longoria v. Hunter Express, Ltd.*: first, determining whether the jury's award was excessive under federal and Louisiana law and, then, looking to the federal maximum recovery rule as a guidepost in using its discretion to set a remittitur.[40]   932 F.3d 360, 365 (5th Cir. 2019) (discussing how state and federal law may apply to determine excessiveness of a jury verdict and noting that using the maximum recovery rule as a "guidepost in setting a remittitur, which is itself a discretionary act," does not override state substantive law).

The Court's analysis at both stages – determining excessiveness and setting the remittitur – was largely guided by *Gaddy v. Taylor Seidenbach, Inc.*, 446 F. Supp. 3d 140 (E.D. La.), *aff'd sub nom., Adams v. Ethyl Corp.*, 838 F. App'x 822 (5th Cir. 2020), which it found to be the most factually similar case.[41]   The *Gaddy* court, after reviewing the general damages jury/bench awards in comparable Louisiana cases, found that the jury's award of $7,500,000 was excessive. *Id.* at 160-62.  It then recognized that "[m]ost survival actions involving mesothelioma have generated recoveries ranging from $1,500,000.00 to $3,000,000.00," with "the majority of these cases involv[ing] more evidence of obvious and extreme pain and suffering" than what plaintiff Gaddy experienced. *Id.* at 162.  The district court (Judge Eldon Fallon) concluded that, "[a]fter reviewing all of the evidence in the record and recalling the testimony of the witnesses, [and] *applying the maximum recovery rule*," the appropriate general damages award in that case was $3,000,000. *Id.* at 163 (emphasis added).  On the defendant's appeal, the Fifth Circuit reviewed the remittitur and

---

[40] R. Doc. 380 at 20-32.

[41] *Id.*  Plaintiffs, in the pending motion, do not take issue with this Court's finding that *Gaddy* is the most factually similar case or that the jury's general damages award was excessive, but reserve their right to challenge those rulings on appeal. *See* R. Doc. 381-1 at 6.  Because these points are not at issue in the pending motion, the Court will not discuss those portions of its prior Order & Reasons.

held that the district court properly applied the maximum recovery rule in arriving at the general damages award of $3,000,000. *Adams*, 838 F. App'x at 832.

Accepting and relying on the district court's repeated statements in *Gaddy* that it applied the maximum recovery rule and that the cases at the higher end of the general-damages continuum for jury/bench awards in the cases it examined had more evidence of pain and suffering than Gaddy experienced, this Court reasoned that the *Gaddy* court must have believed that the highest amount the jury reasonably could have awarded in that case was in the neighborhood of $1,500,000 – at the lower end of the continuum the *Gaddy* court recognized. For example, in one of the cases the *Gaddy* court reviewed, a Louisiana appellate court, in December 2006, upheld a jury's $1,416,580.54 general damages award in a similar case. *See Gaddy*, 446 F. Supp. 3d at 161 (citing *Chaisson v. Avondale Indus., Inc.*, 947 So. 2d 171 (La. App. 2006)). The remittitur order in *Gaddy* was issued in March of 2020. Rounding the December 2006 award in *Chaisson* to $1,500,000 (which, again, was at the lower end of the *Gaddy* court's continuum), the inflation-adjusted sum for this award in March of 2020 would have been $1,918,595.14.[42] When the maximum recovery rule's 50% multiplier is applied, the amount becomes $2,877,892.71, which rounds to $3,000,000, the remitted damages award in *Gaddy*.[43]

Because *Gaddy* is the most factually similar case to this one, this Court decided that the damages award in this case should align with the remitted award there. However, this Court was

---

[42] This calculation was derived using the U.S. Bureau of Labor Statistics' ("BLS") CPI Inflation Calculator. *See Longoria*, 932 F.3d at 367 n.6 (using the same tool to adjust for inflation).

[43] The rounding done in at least two steps of this Court's recapitulation of the *Gaddy* court's application of the maximum recovery rule is warranted because the rule is merely an approximation – a "guidepost" – for a fair award, especially when the rounding is done in the plaintiff's favor. That the *Gaddy* court did not recount its application of the maximum recovery rule step by step does not mean it did not apply the multiplier. Silence is not tantamount to inaction, especially when what the *Gaddy* court did say was that it applied the rule, not just part of it. After all, Plaintiffs could not be clearer that they believe that all three steps of the rule are "required," so it is more reasonable to conclude that both Judge Fallon and the *Adams* panel acted in accordance with controlling law than that they did not, which is the assumption Plaintiffs are forced to advance.

careful to observe that *Gaddy* was being used only as a guide for analysis because, as a case involving a remitted award, *Gaddy* itself could not show what a reasonable jury would have awarded.[44] Instead, this Court relied upon the cases underlying the *Gaddy* decision – particularly those at the lower end of the general damages continuum, given the limited evidence adduced at trial of Marcella's mesothelioma-related pain and suffering – to determine the highest amount the jury could reasonably have awarded based on the evidence without abusing its discretion.[45] Like the *Gaddy* court, this Court concluded that the facts of this case are more similar to the mesothelioma survival actions that fell at the lower end of the continuum – around the $1,500,000 mark – because there was relatively little evidence of obvious and extreme pain and suffering experienced by Marcella.[46] The Court then reasoned that, because the *Gaddy* remittitur already accounted for inflation from December 2006 to March 2020 and included the multiplier, all that was required to reach a just award here was to adjust for inflation from March 2020 to May 2026,[47] resulting in a figure of $3,895,042.91, which was then rounded to $3,900,000.[48]

Importantly, the Fifth Circuit holds that the multiplier is not part of the calculation when it has already been included in the base figure used (like a previously remitted award) because,

---

[44] R. Doc. 380 at 27.

[45] *Id.* at 27-32.

[46] *Id.* at 32; *see also id*. at 25-26, 30 (reviewing the relevant facts of Marcella's advanced age, underlying health conditions, post-death diagnosis, limited medical treatment for mesothelioma-related symptoms, and scant evidence of pain and suffering).

[47] Again, the adjustment was made using the BLS CPI Inflation Calculator. The Court used the month when the remittitur motion was decided (May 2026) but arguably should have used the month when the jury verdict was rendered (February 2026). *See Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 301 (5th Cir. 2024) (adjusting for inflation in the month the jury verdict was decided). This choice resulted in a slight windfall to Plaintiffs.

[48] R. Doc. 380 at 32. The result is essentially the same if this Court were to start with the jury award of $1,500,000 at the lower end of the continuum established in *Gaddy* for comparable jury/bench awards. That amount ($1,500,000), adjusted for inflation, was worth $2,491,003.47 in May of 2026. When it is increased by 50%, the result is $3,736,505.20. The resulting figure is not identical to the amount calculated by this Court because Plaintiffs actually benefit from the *Gaddy* court's rounding of the inflation-adjusted and multiplier-enhanced figure of $2,877,892.71 to $3,000,000. Indeed, when inflation from March 2020 to May 2026 is added to $2,877,892.71, the resulting amount is $3,736,505.20, the exact same number derived if this Court started with $1,500,000 in December 2006 dollars. The rigid sequence for application of the maximum recovery rule advanced by Plaintiffs is not required by the law, nor necessary for the relevant mathematical operations to work. *See* Appendix to this opinion.

otherwise, it "could lead to explosive growth in damage awards," which would be an absurd result. *See Harris*, 92 F.4th at 301 n.13 (quotation omitted).[49]  In other words, in such cases, as here, the multiplier is already accounted for, not skipped.  Therefore, there was no error in this Court's application of the maximum recovery rule.   In the end, Plaintiffs' motion is bottomed on the incorrect assumption that this Court failed to apply the multiplier step of the maximum recovery rule because the district court in *Gaddy* and the Fifth Circuit in *Adams* supposedly failed to do so. But this assumption ignores the explicit statements of both of those courts that they were applying the maximum recovery rule – not in part, but in whole.  *Gaddy*, 446 F. Supp. 3d at 163 ("After reviewing all of the evidence in the record and recalling the testimony of the witnesses, the Court, applying the maximum recovery rule, concludes that an appropriate award in this case is $3,000,000.00 in general damages …."); *Adams*, 838 F. App'x at 832 ("After determining that the jury's award was excessive, the district court applied the maximum recovery rule ….").  Neither the district court nor the Fifth Circuit indicated that its application of the maximum recovery rule omitted the multiplier step.  Thus, Plaintiffs simply fail to credit those able courts – including the appellate court that could have reversed any defective remittitur *sua sponte* – with the ability to fairly evaluate the facts and correctly apply the law in its entirety.  That no one raised the issue of a supposedly foregone multiplier does not mean, as Plaintiffs are compelled to infer, that counsel on both sides in *Gaddy* were bereft of legal acumen.  Instead, no one raised the issue on appeal because there was no issue to raise since Judge Fallon applied the maximum recovery rule in precisely the manner the law prescribes – which was recognized by the Fifth Circuit in affirming his result.  *See Trayling v. St. Joseph Cnty. Emps. Ch. of Local #2955,* 751 F.3d 425, 427 (6th Cir.

---

[49] Citing to *Harris*, Plaintiffs admit this point.  R. Doc. 381-1 at 9 ("To be sure, a court need not apply the multiplier or enhancement if the court's remittitur analysis relies on past similar awards that themselves applied the multiplier or enhancement.").

11

2014) ("In the absence of a contrary signal in the district court's ruling, we presume that the court followed the law."). In suggesting otherwise, in the face of both courts' avowed application of the rule, belies the weakness of Plaintiffs' position. Yet, it is the necessary, albeit fundamentally erroneous, assumption on which Plaintiffs' argument for reconsideration depends. Accordingly, Plaintiffs' motion for reconsideration is denied as to adjusting the remittitur.

### C. Scope of New Trial

Plaintiffs and Third-Party Defendants argue that the scope of any new trial should be limited to damages.[50] Avondale does not oppose this portion of the motion.[51] The Court finds that damages can be tried alone without any confusion. Therefore, if Plaintiffs elect a new trial in lieu of the remittitur, the new trial will be limited to general damages.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' motion for reconsideration of this Court's remittitur ruling (R. Doc. 381) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs must file either an acceptance of the remittitur or notice of intent to retry the case within seven days of the issuance of this Order & Reasons. Should Plaintiffs elect retrial, that trial will be limited to the issue of general damages.

IT IS FURTHER ORDERED that, if Plaintiffs elect to accept the remitted award, the parties must jointly submit to the Court a proposed final judgment within five days of the date of Plaintiffs' notification to the Court of their choice.

---

[50] R. Docs. 381; 384; 387; 389; 393.
[51] R. Doc. 394.

New Orleans, Louisiana, this 14th day of July, 2026.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

**APPENDIX**

While the law does not require that the maximum recovery rule be deployed with absolute mathematical precision, the following "proof" demonstrates that the Court's updated inflation adjustment (through May 2024) of *Gaddy*'s remittitur figure (which was already adjusted for inflation through March 2020 *and* increased by the 50% multiplier) yields the same result for remittitur as would Plaintiffs' proposed formula, so long as one begins with the same number for a reasonable jury award ($J_1$ in the equations below):

**Plaintiffs' Proposed Maximum Recovery Rule Formula:**

$$R = \left( J_1 \; x \; I \, ^{Date \; of \; J_2}_{Date \; of \; J_1} \right) + \; .50 \left( J_1 \; x \; I \, ^{Date \; of \; J_2}_{Date \; of \; J_1} \right)$$

*Where R* is the remittitur sought;
      *I* is the inflation adjustment per the BLS CPI Inflation Calculator;
      $J_1$ is the comparable jury award; and
      $J_2$ is the jury award under review.

The formula reduces to the following:

$$R = 1.5 \left( J_1 \; x \; I \, ^{J_2}_{J_1} \right)$$

If $J_1$ is $1,500,000 (the lower end of the *Gaddy* continuum) with a date of December 2006, and the date of $J_2$ is May 2026, then:

$$R = 1.5 \left( 1,500,000 \; x \; I \, ^{May \; 2026}_{Dec. \; 2006} \right)$$

$$R = 1.5 \; (2,491,003.47)$$

$$R = \$3,736,505.20$$

**Updated Inflation Adjustment of *Gaddy*'s Application of Maximum Recovery Rule:**

$$R = \left[ \left( J_1 \; x \; I \frac{Date\ of\ J_{1.5}}{Date\ of\ J_1} \right) + .50 \left( J_1 \; x \; I \frac{Date\ of\ J_{1.5}}{Date\ of\ J_1} \right) \right] x \; I \frac{Date\ of\ J_2}{Date\ of\ J_{1.5}}$$

***Where*** $J_{1.5}$ is the *Gaddy* jury award (or other intervening award which previously applied the maximum recovery rule), with all other equation symbols remaining the same.

This formula reduces to the following:

$$R = \left[ 1.5 \left( J_1 \; x \; I \frac{Date\ of\ J_{1.5}}{Date\ of\ J_1} \right) \right] x \; I \frac{Date\ of\ J_2}{Date\ of\ J_{1.5}}$$

If $J_1$ is \$1,500,000 with a date of December 2006, the date of $J_{1.5}$ (the *Gaddy* jury verdict) is March of 2020, and the date of $J_2$ is May 2026, then:

$$R = [\, 1.5 \, (1,500,000 \; x \; I \frac{Mar.\ 2020}{Dec.\ 2006}) ] \; x \; I \frac{May\ 2026}{Mar.\ 2020}$$

$$R = [\, 1.5 \, (\, 1,918,595.14\,) ] \; x \; I \frac{May\ 2026}{Mar.\ 2020}$$

$$R = 2,877,892.71 \; x \; I \frac{May\ 2026}{Mar.\ 2020}$$

$$R = \$3,736,505.20$$

This is just one example of the familiar mathematical principle that multiplying the exact same set of numbers will always yield the same result. The order of the numbers (commutative property) and how they are grouped (associative property) do not change the product.